RANDALL K. ROONAN (RR4407) SKIP SHORT (SS2788)
SHORT & BILLY, P.C.
217 Broadway, Ste. 300
New York, NY 10007
(212) 732- 3320
Attorneys for Defendants and Third-Party Plaintiffs ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY and ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------x
CAMBRIDGE MEDICAL, P.C.,

                              Plaintiff,

                     -against-

ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY
COMPANY and ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY
                              Defendants.

*and*

ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY
COMPANY and ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,
                              Defendants and Third-Party Plaintiffs,

                     -against-

PINE HOLLOW MEDICAL, P.C.MARK J. LEVITAN,
EILEEN S. DEBBI, M.D., F. SCOTT NOWAKOWSKI, M.D.,
NICHOLAS M. JONES, D.O., SCOTT A. JONES, D.O.,
ALEXANDRA PERKINS, M.D., DOMINIC JUDE RUBINO, D.C.,
FRANK MANDARINO, D.C., JASON SCOTT BRATTNER, D.C.,
RONALD MAZZA, D.C., MICHAEL A. BERSTEIN, D.C.,
JONATHAN TEPPER, D.C., WALTER MENDOZA, D.C.,
BROOKLYN CHIROPRACTIC ASSOCIATES P.C.,
BRONX CHIROPRACTIC ASSOCIATES, P.C.,
STATEN ISLAND CHIROPRACTIC ASSOCIATES, P.C.,
COMPLETE CHIROPRACTIC, P.C.,
QUEENS CHIROPRACTIC ASSOCIATES, P.C.,
RONALD MAZZA, D.C., P.C., WALTER MENDOZA
CHIROPRACTOR, P.C., MICHAEL A. BERNSTEIN, D.C., P.C.,
JOHN DOES 1 and 2 and ABC CORPS. 1 and 2,

                              Third Party Defendants.

-------------------------------------------------------------------------------------x

**DEFENDANTS AND
THIRD-PARTY
PLAINTIFF'S
MEMORANDUM
OF LAW IN
OPPOSITION TO
PLAINTIFF AND
THIRD-PARTY
DEFENDANTS'
MOTION TO
DISMISS**

## TABLE OF CONTENTS

Table of Authorities……………………………………………………………i

Index to Exhibits……………………………………………………………iv

Preliminary Statement ………………………………………………………1

Statement of Facts …………………………………………………….................. 5

Argument

I.   The Movants' Motion to Dismiss Should Be Denied Because It Is An Improper
     Motion For Summary Judgment And Allstate has Sufficiently Pleaded Each of its
     Causes of Action…………………………………… ..………………….……… 5

II. The Movants' Factual Claims Are Insufficient To Rebut the Claims
    In the Third Party Complaint ……………………….…………….................. 11

III. Allstate's Claims Are Consistent with the Insurance Law And the No-Fault
     Regulations …..……………………………………………………..……….16

IV Section 238-a Of The Public Health Law Was Violated By The Movants…............. 20

V. The Movants' Res Judicata And Statute of Limitations Claims Are Not
   Suitable For Resolution On This Motion ………………………….…………….. 28

VI. In The Alternative Allstate Requests Leave To Replead ……………………….30

Conclusion …………………………………………………………………….30

TABLE OF AUTHORITIES

CASES

AIU Insurance Company v. Deajess Medical Imaging, P.C.,
24 Misc.3d 161 (Sup.Ct. Nassau County, 2009). ………………………………… 12

Allstate v. Halima, 2009 WL 750199 at *6 (EDNY 2009); ……………........... 17, 18, 19, 29

Allstate v. Lyons, 2012 WL 517600 at *14 (E.D.N.Y 2012); ………………………….. 17

Allstate Ins. Co. v. Valley Physical Medicine Rehab., P.C.,
555 F. Supp. 2d 335, 340 (E.D.N.Y. 2008); ………………………………………… 17

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). ………………………………   6

Calcutti v. SBU, Inc., 273 F. Supp. 2d 488, 497-99 (S.D.N.Y. 2003)…………………..   9

Clemens v. Apple ,65 N.Y.2d 746 (1985). ………………………………………… 23

Deajess Medical Imaging, P.C. v. AIG Insurance Company, Index No. 013569/06…… 11

Dermatossian v. New York City Transit Auth.,
67 N.Y.2d 219, 225, 501 N.Y.S.2d 784, 787 (1986)………………………………… 18

Dr. Steven Matrangolo, D.C. P.C. v. Allstate,
Index# 060393/09 (Moulton J, NY Civil Court 2011) …………………………............. 27

Dr. Matrangolo/Fitzhugh v Progressive,
Index # 52599/09 (Engoron J, NY Civil Court 2011) …………………………………24, 28

Dr. Steven Matrangolo/Annalouise Davis v Allstate,
Index# 060393/09 (Moulton J, NY Civil Court 2011)…………………………....... 25, 28

Dr. Steven Matrangolo/Maria Fernandez v. Allstate,
Index# 060388/09 (Moulton J, NY Civil Court 2011)………………………………… 27
 (Exhibit 9)

Fisher v. Fisher, 205 N.Y. 313, 317 (1929). ………………………………………… 24

Fonte v. Board of Managers of Continental Towers Condominium,
848 F.2d. 24, 25 (2nd Cir. 1988)……………………………………………………..   7

GEICO v. Hollis Medical Care, 2011 WL 4012441 (EDNY 2000) …..........................17, 18

GEICO v. Hollis Medical Care, 2011 WL 5507426 (E.D.N.Y. 2011) ………………...17, 18

Kelly v. Huntington Union Free School Dist.,
 675 F.Supp. 2d 283 (E.D.N.Y. 2009) ……………………........................................   8

Koppel v. 4987 Corp., 167 F.3d 125, 128 (2d Cir. 1999). ……………………………   9

Lombardi v. Stout, 80 N.Y. 2d 290 (1992)………………………………………………   24

Massie v. Crawford, 78 N.Y. 2d 516 (1991)...………………………………………………   24

Matrangolo a/o Infuso, (CV-012997-09); a/o Fanelli, (CV-050716)
 a/o Jackson (CV-012988-09); a/o Muscara (CV-012992-09)  v Allstate…………….   27

Matrangolo DC, PC  a/o  Tina Espinozo-Hernandez
and Edgar Hernandez v. Allstate, 2012 WL 638803 (N.Y. City Civ Ct.) ……………   26

Matrangolo, DC, PC a/o Kevin Fogah,, v. Allstate,
31 Misc3d 129(A) (App Term, 1st Dept. 2011)………………..………………………   26

Matter of Medical Society of New York v. Serio,
100 N.Y.2d 854, 768 N.Y.S.2d 423 (2003)……………………….…………………………   1

One Beacon Insurance Group v. Midland Medical Care, P.C.
54 A.D.3d 738 (App.Div. 2d Dept., 2008)…………………………………………………..   12

Optimum/Monteleone v Geico, (AAA 412011076104)……………………………………   28

Optimum /Rosario v Geico (AAA 412011075977 Dec. 3/20/12)…………………………..   28

Progressive Ne. Co. v. Advanced Diagnostic and Treatment Med. P.C.,
229 N.Y.L.J. 18 col. 2 (N.Y. Sup. Ct. - New York Cty., Aug. 2, 2001)……………   18

Scheuer v. Rhodes, 416 U.S. 232, 236, (1974). …………………………………………   6

Roth v. Jennings, 489 F.3d 499 (2nd Cir. 2007). …………………………………………   6

State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C.
2008 WL 4146190 at *7 (E.D.N.Y. 2008)………………………………….......... ... ...   17

State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 224 (E.D.N.Y. 2009)   17

State Farm Mut. Auto. Ins. Co. v. Kalika 2006 WL 6176152 at *5 (EDNY, 2006)..   17

State Farm Mut. Auto. Ins. Co. v. Liguori, 589 F. Supp. 2d 221 (E.D.N.Y. 2008)...   17

Steven Matrangolo, D.C. P.C. v. Allstate,
Index# 060409/09 (Moulton J, NY Civil Court 2011) ……………………………..          27

Tahir v. Progressive Cas. Ins. Co.,  12 Misc.3d 657 (NY City Civ. Ct. 2006)……..    19, 20

United States v Carlisle HMA, 554 F.3d 88 (3rd  Cir. 2009)  ……………………...        25

United States v Rogan, 459 F. Supp.2d 692, 716 (ND.Ill. 2006).  …………………         25


STATUTES

New York Education Law §6731…………………………………………………          27, 28

New York Insurance Law §409(C)(4)…………………………………………          2, 16, 18, 19

New York Insurance Law §5106 et seq…………………………………………..       3, 4, 17, 18, 23

New York Public Health Law §238-a et seq………       4, 5, 20, 21, 22, 23, 24, 25, 26, 27, 28


42 U.S.C. § 1395…………………………………………………………………          25

RULES

Fed. R. Civ. P. 8………………………………………………………………..          9

Fed. R. Civ. P. 9 et seq………………………………………………………...          3, 5, 9

Fed. R. Civ. P. 12 et seq………………………………………………………3, 6, 7, 8, 9, 21

Fed. R. Civ. P. 56 ……………………………………………………………..          8

## INDEX TO EXHIBITS

Exhibit No.:                                                                                          Page:

1.   State Senate Notice of Public Hearing…………………………………………...1, 19

2.   Dept of financial services march 15, 2012 annual report on health care fraud...1, 19

3.   Department of Financial Services proposed Fourth Amendment……………   2

4.   Governor Cuomo press release in May 2012 regarding the proposed
      amendments…………………………………………………………………   2

5.   November 29, 2000 Ins. Dept. opinion re recovery actions and
      30 day rule………………………………………………………………… 16,19

6.   Cambridge rulings with Allstate…………………………………………   22

7.   Neuwirth bio info……………………………………………………..   22

8.   Memos of law from Cambridge cases with Allstate………………………   22

9.   Three Judge Moulton rulings…………………………………………25, 29

10.  Judge Samuels's Decision in Matrangolo a/o Infuso(CV-012997-09);
      a/o Fanelli(CV-050716); a/o Jackson (CV-012988-09); a/o Muscara
      (CV-012992-09) v  Allstate (noted in her comments on page 29 of the
      trial transcript………………………………………………………… 27,28

11.  Matrangolo/Fitzhugh v Progressive……………………………………   24

12.  Optimum/Monteleone v Geico and  Optimum /Rosario v Geico
      And Optimum/Rosario v. Allstate……………………………………..   28

iv

## Preliminary Statement

The State of New York has provided for no-fault automobile insurance as a form of coverage designed to be useful to the consumer and to provide medical coverage, lost wages and other benefits to people injured in automobile accidents so that they can recover from their injuries with minimal disruption in their lives.  For approximately twenty years, commencing with its inception in 1974, the no-fault system functioned to the benefit of the consumer at premiums that were generally affordable.

Since the mid-1990s New York's no-fault coverage has been targeted by perpetrators of fraud. An increasingly large number of such persons have gone into business with the purpose of abusively billing New York no-fault.  The New York Court of Appeals commented in upholding changes to the Insurance Department's No-Fault regulations that the No-Fault system has been targeted by and permeated with fraud.  As the Court of Appeals explained in Matter of Medical Society of New York v. Serio, 100 N.Y.2d 854, 768 N.Y.S.2d 423 (2003), the fraud has included staged accidents, billing for unnecessary services and organized crime involvement. Id. at 861-62, 768 N.Y.S.2d at 731.

The problem continues to the present, as the State Senate Standing Committee on Insurance recognized in hearings on no-fault fraud.  *See* New York State Senate, Notice of Public Hearing (Feb. 4, 2010) (discussing "fraud and abuse of [New York's] no-fault system") (Exhibit 1).  The Department of Financial Services (the successor agency to the Insurance Department) on March 15 2012 issued its annual report on health care fraud and documented that the fraud has remained a persistent problem and no-fault fraud eclipses all other reports of fraud. (Exhibit 2)

1

In the opinion of the Department of Financial Services, the situation has become so grave that it has recently proceeded to adopt as an emergency regulation, amendments to its regulations permitting it to decertify health providers who abuse and/or defraud the no-fault system. See Exhibits 3 and 4. As the Department of Financial Services noted in its reasons for the issuance of the emergency regulation, these abusive practices not only drive up the cost of insurance, they place in peril the quality of health care available to the public.

The State of New York requires insurers to investigate fraud and to have a plan for the filing of antifraud civil lawsuits.   See New York Insurance Law §409(C)(4).   Pursuant to the statutory directive and in an attempt to rid the field of the pervasive fraud, Allstate has engaged in antifraud activities including the filing of a number of RICO and antifraud lawsuits, including the counterclaims and third-party complaint in the present action.

The Answer, Counterclaims and Third-party Complaint in this action allege that the Plaintiff CAMBRIDGE MEDICAL, P.C. (hereinafter referred to as "Cambridge") and Third-Party Defendant PINE HOLLOW MEDICAL, P.C. (hereinafter referred to as "Pine Hollow") provided useless reports to their referring providers, some of which are included as third-party defendants in this action.  The findings were repeatedly falsified and Cambridge and Pine Hollow routinely set forth findings that were impossible.  These reports could have been of no benefit to the patients and the practices of Cambridge and Pine Hollow could have led to injury to the patients.  It is alleged that the referrals were not made to Cambridge and Pine Hollow in order to help the patients. Rather, Cambridge, Pine Hollow and the third-party defendants/referring providers engaged in a scheme to generate billing.  For Cambridge and Pine Hollow the purpose of the scheme was money, billing insurers for useless tests out of the patients' limited no-fault coverage.  For the referring providers, Cambridge and Pine Hollow offered to provide them with positive findings to support their

2

treatment and their billing.  Cambridge and Pine Hollow represented that there were positive findings for almost every single patient.  Cambridge and Pine Hollow also offered the referring providers money.  And while being paid by Cambridge and Pine Hollow, the referring providers/third-party defendants sent their patients to Cambridge and Pine Hollow for useless batteries of tests with falsified and impossible findings.  This entire system is an assault upon the interests of the patients who both received false medical reports and had their limited insurance benefits reduced by payments for the useless testing.

The Plaintiff Cambridge and the Third-Party Defendants EILEEN S. DEBBI, M.D., F. SCOTT NOWAKOWSKI, M.D., NICHOLAS M. JONES, D.O., SCOTT A. JONES, D.O., ALEXANDRA PERKINS, M.D. and MARK J. LEVITAN (these parties are hereinafter collectively referred to as the "movants") move to dismiss the Counterclaims and Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), New York Insurance Law § 5106(a), the Rooker-Feldman Doctrine and the applicable statute of limitations.

This motion should be denied. The Counterclaims and Third-Party Complaint are specifically pleaded, are well warranted by the facts and they set forth actionable claims against the plaintiff and third-party defendants.

This is a motion that never should have been filed.  It is directly contrary to the ruling of this Court that no summary judgment motions should be made at this time.  While the movants call their motion a motion to dismiss, it is in substance a motion for summary judgment.  The movants do not contend that the counterclaims and third-party complaint fail to state a cause of action.  Rather they disagree with the allegations set forth in the Third-Party Complaint.  Even if the motion had been made as a motion for summary judgment, it would be deficient as the movants' claims should be the subject of discovery.

The movants also make false claims to the Court and have engaged in significant omissions in their presentation of the relevant law.

First the movants represent to the Court that Allstate filed this case seeking to negotiate the movants' claims and that Allstate would resolve this action for a waiver of the movants' claims. This is a serious misrepresentation to the Court that the movants know to be false and Allstate requests that the movants withdraw this false claim.

Second, the movants contend that Allstate cannot sue the movants for fraud if it did not deny their claims within the 30-day period of Insurance Law §5106. Allstate previously advised the movants in responding to the request for a pre-motion conference that this claim has been repeatedly rejected in the Courts including rulings in this District and in cases in which counsel for the movants were also counsel. Nevertheless the movants still proceeded to make this claim in their motion and again failed to disclose the numerous cases that have rejected this claim including cases in which counsel for the movants were involved.

Third, the movants ask the Court to ignore two rulings against them on one of the main issues in their motion – whether or not the service agreements with the referring providers violated the New York Public Health Law. Violations of Public Health Law §238-a provide both a defense to payment and the right to recover all payments made. The movants do not annex copies of the decisions. Instead they represent to the Court that these were no-fault collection cases and that "Cambridge did not have the incentive or initiative to fully litigate these cases." (Cambridge Memorandum of Law p. 23) This representation is the opposite of the truth. In fact, Cambridge realized quite well the significance of the issue that was being litigated. It submitted a post trial memorandum of law in which it was represented by two different law firms, and two of the lawyers who submitted the memorandum on behalf of Cambridge have appeared as

4

counsel for Cambridge in this case.  Cambridge gave these cases the highest priority and made every effort to prevail.  Cambridge has not disclosed this to the Court.  When the actual facts are considered, these cases support a denial of Cambridge's motion to dismiss and when Allstate ultimately files its motion for summary judgment, it will support a ruling in Allstate's favor.

**Statement of the Facts**

The facts in this case are set forth in detail in the Answer, Counterclaims and Third-party Complaint filed in this action.  The fraud allegations are set forth in detail and with particularity as required by Fed. R. Civ. P. 9(b).  In essence it is alleged that the plaintiff and the third-party defendants conspired to and engaged in an elaborate scheme to commit insurance fraud.  They repeatedly billed for unnecessary testing, falsified their medical findings, set forth findings that were not capable of being made in the testing administered and that the actions of these parties could have jeopardized the patients' welfare.  In addition, Cambridge and Pine Hollow had illegal financial relationships with the referring providers in violation of New York Public Health Law §238a.

The movants have improperly submitted factual material, much of it inadmissible, in support of what is actually an improper motion for summary judgment, filed in violation of this Court's prior order that no such motions are to be filed at this time.  In response, Allstate is abiding by the Court's prior order and submits no factual material.  Allstate points to the contradictions in the movants' improper "factual" claims and the fact that the movants' factual presentation would actually support summary judgment against Pine Hollow on its improper control by a lay person and against the movants on the self-referral issue.

**<u>Argument</u>**

**I. The Movants' Motion to Dismiss Should Be Denied Because It Is An Improper Motion For Summary Judgment And Allstate has Sufficiently Pleaded Each of its Causes of Action.**

5

It is axiomatic that a motion to dismiss is based upon the sufficiency of the pleadings whereas a motion for summary judgment is based upon the sufficiency of the evidence. The movants in this case have submitted what they claim is a motion to dismiss, but what is actually a fact based motion for summary judgment. Even so, this motion ignores key sections of the Third-party Complaint and submits contradictory and inadmissible "evidence." This would require that the motion be denied even if it had been brought as a motion for summary judgment. In this case the movants have submitted this motion after the Court previously ruled that no motions for summary judgment were to be filed until the conclusion of discovery and the movants' motion is in violation of this order. It will require counsel fees to be expended by Allstate to oppose what is an improper motion as well as a motion that is completely devoid of merit.

F.R.C.P. 12 (b)(6)  allows a party to move to dismiss for "failure to state a claim upon which relief can be granted." On a motion to dismiss, the issue is "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, (1974). In order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

As stated by the movants in their Memorandum of Law, generally a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. Roth v. Jennings, 489 F.3d 499 (2nd Cir. 2007).

In this case the movants do not challenge the Third-Party Complaint as stating a cause of action. Instead, the movants offer an abundance of factual material and seek to move for summary judgment in the guise of a motion to dismiss. This is improper. It is also in direct

violation of the January 13, 2012 Order of Judge Wexler that summary judgment motions should not be made at this time.

It should also be noted that almost none of the movants' motion relates to Pine Hollow. Most of the factual claims relate to Cambridge. There are no affidavits or documents in support of Pine Hollow and Pine Hollow is infrequently mentioned in the motion. The limited evidence offered by the movants is actually against Pine Hollow and supports the entry of summary judgment against Pine Hollow at an appropriate time. While Allstate is abiding by the Court's prior ruling not to move for summary judgment until the conclusion of discovery, the movants have asked to dismiss the entire Third-party Complaint while offering evidence that actually supports summary judgment against Pine Hollow. No written agreements have been produced relating to Pine Hollow and there are no claims that Pine Hollow's illegal financial relationship with its referring providers was legal. In addition, concerning the claims set forth in the Third-party Complaint that Pine Hollow was illegally owned, managed and controlled by the Defendant Levitan, the movants' factual submission supports summary judgment against Pine Hollow, Levitan and Debbi. See Point II herein.

It is well established that a movant cannot support a motion to dismiss with factual affidavits and documents. In a 1988 decision in a civil rights action, <u>Fonte v. Board of Managers of Continental Towers Condominium</u>, 848 F.2d. 24, 25 (2nd Cir. 1988), the Second Circuit Court of Appeals vacated and remanded a decision of Judge Duffy of the Southern District of New York where he looked beyond the pleadings. Judge Meskill wrote the Opinion of the Court and explained that:

> The district court's treatment of Mrs. Fonte's affidavit and the factual allegations contained in the memorandum of law raises questions that require us to vacate the judgment and remand for further proceedings. Rule 12(b) gives district courts two options when matters outside the pleadings are presented in

7

response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material. *See* Fed.R.Civ.P. 12(b). *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 (1969 & Supp.1986). On this record we are not satisfied that dismissal here was ordered in conformity with either option. If the district court considered the affidavit in disposing of the Rule 12(b)(6) motion, it erred in failing to convert the motion to one for summary judgment as the rule requires, *see Goldman v. Belden,* 754 F.2d 1059, 1065-66 (2d Cir.1985); *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984). Factual allegations contained in legal briefs or memoranda are also treated as matters outside the pleading for purposes of Rule 12(b). *See United Steelworkers of America, AFL-CIO v. American International Aluminum Corp.,* 334 F.2d 147, 149 (5th Cir.1964), *cert. denied,* 379 U.S. 991, 85 S.Ct. 702, 13 L.Ed.2d 611 (1965). Thus, it would also have been error for the court to consider the factual allegations contained in the plaintiffs' memorandum of law without converting the motion to one for summary judgment.

Relying on <u>Kelly v. Huntington Union Free School Dist.</u>, 675 F.Supp. 2d 283 (E.D.N.Y. 2009) the movants in their Memorandum of Law assert that the Court may upon its own discretion look beyond the pleadings and convert a Rule 12(b)(6) motion to a Motion for Summary Judgment. The movants' counsel refers to documentary evidence that Allstate acquired in the verification process and examinations under oath of some of the third-party defendants and asks the Court to consider this material in this motion. The Court should remember, however, that the defendants and third-party plaintiffs asked the Court to consider a contemporaneous Motion for Summary Judgment and that request was denied. In the present case the Court has specifically ordered that it would not entertain any Motions for Summary Judgment until the close of discovery:

"ORDER re <u>27</u> Letter <u>28</u> Letter, <u>29</u> Letter filed by Allstate Property & Casualty Insurance Company, Allstate Insurance Company, Allstate Indemnity Company. The court has reviewed the parties' correspondence and holds that a pre-motion conference will not be necessary. The court directs counsel to confer and agree upon a briefing schedule as to the proposed motions to dismiss only, at this time, and not as to any motion for summary judgment. Motions for summary judgment shall be considered when discovery is complete. Counsel shall

8

communicate the agreed upon briefing schedule for the motions to dismiss to this court by way of a letter to be filed within one week of the date of this order. The parties are directed to proceed with discovery under the direction of the assigned Magistrate Judge who has scheduled a conference in this matter. Counsel are reminded of this court's rules regarding the requirement that the moving party collect and serve courtesy copies of the motion upon this court upon full briefing and prohibiting the filing of any motion papers until the date of full briefing. On that date, each party is responsible for their own electronic filing. So Ordered by Senior Judge Leonard D. Wexler on 1/13/2012. (Shields, Anne) (Entered: 01/13/2012)" Docket Entry 1/13/2012.

In Koppel v. 4987 Corp. Judge Straub wrote: "At the outset, we note that in reviewing a District Court's dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, we take as true all well-pled facts alleged in the complaints." Koppel v. 4987 Corp., 167 F.3d 125, 128 (2d Cir. 1999). The allegations in the Answer, Counterclaims and Third-party Complaint were pled well enough for the movants' attorney to understand, quote and take issue with them. For the purposes of this motion the Court must accept them as true. These allegations, if taken as true, set forth sufficient pleadings under F.R.C.P. 8 and 9.

Extrinsic matters are not a permissible basis for moving to dismiss a pleading. See, e.g., Calcutti v. SBU, Inc., 273 F. Supp. 2d 488, 497-99 (S.D.N.Y. 2003)

The movants seek to justify their submission of extensive factual material by claiming that material annexed to a pleading may be considered on a motion to dismiss. While such a claim is true, the movants have gone well beyond the limits of this rule. The movants' submit the Affidavit their attorney who offers his opinion on Cambridge's legal status. His affidavit is of no probative value as it is not based upon personal knowledge. It also was obviously not annexed to the Third-party Complaint. Similarly, the movants' offer the Affidavit of the Defendant Nicholas Jones. This Affidavit does not set forth any factual basis and foundation for the conclusory statements about what the Defendants Levitan and Debbi did and it was not

annexed to the Third-party Complaint. Allstate did not take the examination under oath of the Defendant Nicholas Jones and the submission of this Affidavit is completely improper.  The movants submit only limited excerpts of the examination under oath transcripts.  These documents were not annexed to the Third-party Complaint.  Finally the movants submit the personal tax return of the Defendant Debbi.  Contrary to the movants' claim, this document was not provided to Allstate prior to the filing of the complaint and it was certainly not relied upon in the drafting of the complaint.  The submission of these documents is completely improper and in violation of this Court's prior order that summary judgment motions are not to be made until the conclusion of discovery.

The movants also ignore most of the allegations of the Third-party Complaint.  All allegations concerning Pine Hollow are ignored.  While the movants do selectively address the allegations that Cambridge was illegally owned by Mark Levitan, they do not seek to rebut the medical claims in the Third-party Complaint. The movants never address the fact that their practices could have injured the patients.  The movants never address the allegations of the Third-party Complaint that the results of the nerve conduction velocity testing were false as they repeatedly diagnosed radiculopathy more than was possible. The movants do not address the key issue that the findings they made on diagnostic ultrasound concerning the facet joint are physiologically impossible.  No affidavit is offered by the Defendants Nowakowski and Perkins on this issue and these Defendants were the radiologists who worked for Cambridge. See Third-party Complaint ¶¶22, 74, 77-78, 96-124.

The movants also falsely represent to the Court that Allstate filed this action in an attempt to obtain a waiver of their claims and that Allstate would accept a waiver of their claims. This is a serious misrepresentation to the Court.  The movants know that this claim is false.  The

movants have engaged in discussions about this case with counsel for Allstate.  While counsel for Allstate would prefer to keep the content of any settlement discussions confidential, the movants' statement to the Court is absolutely false and Allstate requests that the movants withdraw this claim.

## II.  The Movants' Factual Claims Are Insufficient to Rebut the Claims in the Third-Party Complaint.

The movants have made extensive factual arguments concerning the legality of Cambridge's ownership.  These arguments are not a proper basis for a motion for summary judgment and they are in violation of this Court's Order that a summary judgment motion should not be made at this time.

Most of the movants' "factual" claims are inadmissible and/or selective.  The movants offer the affidavit of their counsel, which is inadmissible and entitled to no weight.  The movants offer factual claims of Dr. Debbi as to ultrasound testing, which are based upon hearsay and entitled to no weight.  And the movants offer only limited parts of the examination under oath transcripts of Dr. Debbi, Dr. Nowakowski and Dr. Perkins.

Virtually no argument is made by the movants concerning Pine Hollow and the motion is primarily directed to the claims against Cambridge.

Allstate will not respond to the movants' numerous factual claims with its own evidence because the movants' submission is in violation of this Court's Order.  Allstate is entitled to discovery before these claims are addressed by the Court.

Allstate would like to point out three things to the Court.

First, the movants rely upon an unreported decision in <u>Deajess Medical Imaging, P.C. v. AIG Insurance Company</u>, Index No. 013569/06.  This decision did not decide the case on the

11

merits and denied motions to dismiss.  If anything, the case indicates that issues of whether or not there is de facto control of a medical practice by a non-medical doctor are factual issues supporting discovery.  The movants cite this opinion, while they do not mention a subsequent opinion in the same case which was reported in which the same court took an expansive view of the potential illegal ownership of the professional corporations in question and denied the health provider's motion for summary judgment on the lay person ownership issue.  See AlU Insurance Company v. Deajess Medical Imaging, P.C., 24 Misc.3d 161 (Sup.Ct. Nassau County, 2009).

The case law permits insurers to set forth fraud recovery claims when a professional medical corporation is controlled by non-medical doctors.  See e.g., One Beacon Insurance Group v. Midland Medical Care, P.C., 54 A.D.3d 738 (App. Div. 2d Dept., 2008).

Second, even the factual evidence that the movants have improperly submitted in support of their motion is contradictory.  While Allstate is not submitting evidence as to summary judgment given the prior Order of the Court that such motions are not to be made now, a review of the evidence offered by the movants shows it to be contradictory.

Cambridge's counsel argues that Cambridge has at all times been a properly licensed medical corporation owned, managed and controlled by medical doctors.  The evidence that he attaches to his affidavit, however, is contradictory.  At page 8 of Exhibit "F" to the Blodnick Affidavit, Dr. Nowakowski, one of the professed owners of Cambridge, testified that he paid ten dollars for his shares of the corporation and received back his ten dollars when he stopped working for the company and sold it back.   Paragraph #9 of the shareholders agreement (Blodnick Exhibit "C"), however, provides that if a shareholder ceases to be an employee of the company the shares would revert back to Dr. Debbie, without compensation. Dr. Nowakowski's testimony indicates that Cambridge's paperwork was for show only.  His actions and the sale of

his shares for minimal compensation indicate that clearly Dr. Nowakowski considered the Cambridge corporation to be no more than a fiction memorialized by worthless paper.

While Mr. Blodnick only attaches a portion of the transcript of Dr. Debbi's EUO testimony, even in the very limited excerpts annexed, the Defendant Debbi was not credible. She first claimed that she herself provided services at Cambridge at the top of p. 29. When pressed on this issue she had to concede that other doctors provided the services at Cambridge and she did not administer any electodiagnostic testing by herself at pp. 30-31. At first Debbi sought to justify the salary of office manager Jeanette Schindel by claiming that she scheduled appointments and did billing. When she was confronted with the fact that she claimed that the Defendant Levitan did scheduling in seeking to justify his exorbitant salary, she changed her sworn testimony and said Schindel did billing. See p. 37. Cambridge also claims it paid substantial amounts to the referring providers for the scheduling of appointments. Thus, Cambridge and Debbi were claiming that the scheduling of appointments was part of the reason for Schindel's salary, it was the claimed basis for the absurd amounts paid to Levitan and it was much of the claimed basis for the funneling of what appear to be illegal substantial payments to the referring providers. See Exhibit J to Blodnick Affidavit numbered paragraph 1.

Concerning the key issue of whether Cambridge made any payments to the referring providers beyond rent payments, Debbi first gave sworn testimony that there were no other payments and she chose to conceal the service agreements. She testified that "there are no additional payments made to the referring chiros." Pp. 65-66. She was asked the same question again and testified "I would have to stick with these answers" and once again chose to conceal the service agreements and to testify falsely. P. 66.

13

Then she was asked a third time with specific reference to charges for using office personnel. She then admitted that there were service agreements and in the process exposed the fact that these agreements had not been previously produced and that her previous sworn claims of the nonexistence of any other payments to the referring chiropractors were false. See pp. 67-68.

Concerning financial issues, Debbi at page 28 of Exhibit "G" e acknowledged that Levitan was paid three times more than what three doctors who are purported to be the owners of Cambridge were paid. This is absurd on its face. It also contradicts Levitan's employment agreement. Debbi testified at page 29 that he was paid $6,000 bi-weekly when, according to his Employment Agreement "Exhibit D" he was to be paid $80,000 per year. As alleged in the Answer, Counterclaims and Third-Party Complaint and as pointed out in Paragraph 29 of Mr. Blodnick's Affidavit, Mr. Levitan was paid $573,096.84 in 2008. He paid no attention to his agreement and took whatever money he wanted from Cambridge. None of the numbers add up and the paperwork was a sham. Levitan controlled Cambridge and took whatever funds he wanted.

The facts alleged in the Third-party Complaint, taken as a whole, set forth a claim that Mark Levitan was the owner of Pine Hollow and in violation of New York Law. The movants have improperly and selectively set forth factual evidence to claim Mark Levitan was not the real owner. This evidence is contradictory and even if this were a motion for summary judgment, which it is not, would support the denial of the motion.

Third, concerning the claims set forth in the Third-party Complaint that Pine Hollow was illegally owned, managed and controlled by the Defendant Levitan, the

14

movants' factual submission supports summary judgment against Pine Hollow, Levitan and Debbi.

Allstate has alleged in paragraph 77 of its Answer, Counterclaims and Third-party Complaint that Cambridge Medical, P.C. is, in essence, the successor corporation of Pine Hollow Medical, P.C. Allstate has alleged that Mark Levitan was the real owner of both Cambridge and Pine Hollow. In the limited pages of the Defendant Nowakowski's examination under oath annexed to the Blodnick Affidavit as Exhibit "F", Dr. Nowakowski supports Allstate's claims and supports summary judgment against Pine Hollow, Debbi and Levitan. He first testified at p. 10 that the owners of Pine Hollow were the Defendants Levitan and Debbi. He then went on to testify that Cambridge was a continuation of Pine Hollow. He testified that at one point in time he quit working at Pine Hollow and went to work for Cambridge. When asked why he replied at pp. 10-11:

> "A.    All I know is that Pine Hollow came to an end and Cambridge came into fruition.
>
> Q.    From your perspective, was Cambridge essentially a continuation of the Pine Hollow practice?
>
> A.    From my perspective in essence it didn't change what I really did at all, so yes."

Debbi's testimony was also incriminating to Pine Hollow and showed that Levitan was in control. The office manager for both Pine Hollow and Cambridge was Jeanette Schindel. However, Schindel was not even paid by Pine Hollow. Instead, Debbi testified, she was paid by the Defendant Levitan's management company, Nissa Management. Pp. 34-36. Debbi also testified that at Pine Hollow she signed checks in blank and gave them to Levitan. P. 75.

15

The evidence submitted by the movants contradicts their claims and in this case supports the allegations in the Third-party Complaint that Pine Hollow was an illegal professional corporation under the control of the Defendant Levitan.

### III.  Allstate's Claims Are Consistent with the Insurance Law And the No-Fault Regulations

The State of New York requires insurers to investigate fraud and to have a plan for the filing of antifraud civil lawsuits.   See Insurance Law §409(C) (4).   The Insurance Department has specifically addressed this issue and concluded that actions such as the present action are consistent with the goals of the no-fault system.  See Exhibit 5.  The case law has similarly supported insurers' antifraud actions.

Pursuant to the statutory directive and in an attempt to rid the field of the pervasive fraud, Allstate has engaged in antifraud activities including the filing of a number of antifraud lawsuits, including the Counterclaims and Third-Party Complaint in the present action.

The movants have claimed that the case law does not permit an insurer to sue for fraud when the claim is not denied within the 30 day period of Insurance Law §5106.  This claim has been overwhelming rejected in the case law.

Allstate previously advised the movants in responding to their request for a pre-motion conference that this claim has been repeatedly rejected in the Courts including rulings in this District and in cases in which counsel for the movants were also counsel.  Nevertheless the movants still proceeded to make this claim in their motion and again failed to disclose the numerous cases that have rejected this claim including cases in which counsel for the movants were involved.

The federal courts of New York have consistently rejected arguments by defendant no-fault providers that affirmative actions are barred by the 30-day rule as set forth in Insurance Law § 5106.  *See* Allstate v. Lyons, 2012 WL 517600 at *14 (E.D.N.Y 2012); Allstate v. Halima, 2009 WL 750199 at *6 (EDNY 2009); GEICO v. Hollis Medical Care, 2011 WL 4012441 (EDNY 2000) *reversed on other grounds upon reconsideration* GEICO v. Hollis Medical Care, 2011 WL 5507426 (E.D.N.Y. 2011); State Farm Mut. Auto. Ins. Co. v. Liguori, 589 F. Supp. 2d 221 (E.D.N.Y. 2008); State Farm Mut. Auto. Ins. Co. v. Kalika 2006 WL 6176152 at *5 (EDNY, 2006); State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 224 (E.D.N.Y. 2009); Allstate Ins. Co. v. Valley Physical Medicine Rehab., P.C., 555 F. Supp. 2d 335, 340 (E.D.N.Y. 2008); State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C., 2008 WL 4146190 at *7 (E.D.N.Y. 2008).

Recently, the Court in Allstate v. Lyons, again rejected the same argument that Cambridge is making here that the Insurance Law prohibits such affirmative actions by insurers. Counsel for Cambridge herein was also counsel for other providers in Lyons when these arguments were raised before the Court.  In Lyons, Allstate properly alleged and pled that the PC defendants provided fraudulent and worthless radiologic testing.  Likewise, Allstate herein has pled that Cambridge's diagnostic testing was fraudulent and wrought with impossible findings.

None of these cases were disclosed by Cambridge. Yet counsel for the Cambridge was also counsel in Allstate v. Lyons, GEICO v. Hollis Medical Care, and Allstate Ins. Co. v. Halima.

Similarly, the same argument has been rejected by state Supreme Courts.  For example, Justice Gammerman held the No-Fault law does not bar subsequent actions by an insurer for the recovery of fraudulently obtained benefits where such actions are authorized by any other statute

or under common law.  See Progressive Ne. Co. v. Advanced Diagnostic and Treatment Med.

P.C., 229 N.Y.L.J. 18 col. 2 (N.Y. Sup. Ct. - New York Cty., Aug. 2, 2001).  Justice

Gammerman commented on the absence of any statutory language suggesting that affirmative

fraud claims were precluded in this circumstance, and relied upon an opinion from the New York

State Department of Insurance, dated November 29, 2000, to which he gave deference, stating

Section 5106 "is in no way intended and should not serve as a bar to subsequent actions by an

insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is

authorized under the auspices of any other statute or under common law." Id. (citing N.Y. Dept.

of Ins. Gen. Couns. Op. Ltr. at 2 (November 29, 2000).   A copy of this opinion is annexed

hereto as Exhibit 5.

    The conclusion reached by the courts in all the above cases -- *i.e.,* that the 30-day rule

does not preclude affirmative claims against fraudulent providers -- is also supported by the

Court of Appeals' decision in Dermatossian v. New York City Transit Auth., 67 N.Y.2d 219,

225, 501 N.Y.S.2d 784, 787 (1986).  The Court there noted the primary purpose underlying the

No-Fault laws -- that claimants obtain "prompt payment of first-party benefits without regard to

fault and without expense to them." Id.   Under these circumstances the Dermatossian Court

concluded that paying a No-Fault claim could not be deemed an admission in a claimant's

subsequent action for damages and would "unquestionably frustrate the very purpose of the No-

Fault Law by discouraging insurers from making prompt and voluntary payment of claims." Id.

The Insurance Department opinion came to the same conclusion.  See Exhibit 5.

    The Third-party Complaint in this action sets forth very serious and dangerous insurance

fraud schemes.  When the Legislature enacted Article 4 of the Insurance Law, in particular

§409(c) (4), it made combating insurance fraud a priority.  Both the Court of Appeals and the

State Senate have reiterated the dangers that insurance fraud pose.  See Exhibits 1 and 2 and Medical Society.

Despite Cambridge's broad allegations to the contrary, Allstate's claims in this action are for recoupment of payments for fraudulent and physiologically impossible treatment by Cambridge – not for treatment that was merely not medically necessary.  The fraudulent scheme and reports could not surface on a report-by-report basis.  Rather, the fraudulent testing, which also further supports Allstate's arguments on all other nonprecludable defenses, is virtually identical to the fraudulent and useless testing discussed by the court in Lyons.

Cambridge relies upon a Civil Court decision, Tahir v. Progressive Cas. Ins. Co., 12 Misc.3d 657 (NY City Civ. Ct. 2006) to support its argument.  Tahir, however, was not a recovery action and has no relevance to the movants' claims.  It was rejected and distinguished by this Court in Allstate v. Halima, 2009 WL 750199 at *6 (EDNY 2009).  The Court in Halima distinguished Tahir from the recovery action asserted by Allstate in that the allegations as set forth in Allstate's federal recovery action are invariably different from the Medicare grounds alleged in Tahir.  In Tahir, the insurer alleged that the testing was not medically necessary in that the testing had been rejected by Medicare and, as such, was fraudulent.  See Tahir v. Progressive Cas. Ins. Co., 12 Misc.3d at 509.  The Civil Court held that the insurer's defense based solely on the Medicare standard was an inadequate basis to allege fraud.  In the instant matter, like in Halima, Allstate has adequately pled a plethora of fraudulent acts, including a layperson's control over medical corporations, and improper referrals.  Allstate's allegations herein are parallel to those in Halima which the Court upheld.

The movants' argument has been rejected by this and other Courts again and again and counsel for the movants were counsel in several of the cases where the argument was previously

made. Yet no disclosure of these cases has been made by the movants.    This claim should not have been made by the movants and it has no basis under the case law.

## IV. Section 238-a of the Public Health Law Was Violated by the Movants.

The movants seek to dismiss the claims of an illegal referral arrangement between Cambridge and Pine Hollow and their referring providers. They submit no evidence as to Pine Hollow and there is no basis for a dismissal of any claims relating to Pine Hollow. They submit agreements with only one of more than forty referring providers for only one of the years in question as to Cambridge. No evidence whatsoever is submitted as to the other forty referring providers and no evidence is submitted as to the other years with the one provider whose alleged agreement was produced. And as to that one provider, Allstate would still be entitled to discovery.

Initially it should be noted that Cambridge and Debbi went to some lengths to conceal the payments allegedly for "services" to the referring providers. They were placed into a second and separate agreement from the lease agreement and were concealed from Allstate by Cambridge when all agreements were first requested. Concerning the key issue of whether Cambridge made any payments to the referring providers beyond rent payments, Debbi first gave sworn testimony that there were no other payments and she chose to conceal the service agreements. See her examination under oath at pp. 65-66. She testified that "there are no additional payments made to the referring chiros." She was asked the same question again and testified "I would have to stick with these answers" and once again chose to conceal the service agreements and to testify falsely. P. 66. Then she was asked a third time with specific reference to charges for using office personnel. She then admitted that there were service agreements and in the process exposed the fact that these agreements had not been previously produced and that her previous sworn claims

20

of the nonexistence of any other payments to the referring chiropractors were false. See pp. 67-68.

As a threshold matter, the issue raised by the movants has already been litigated by Cambridge and Cambridge has lost on the very issue before this Court. That ruling, made in two cases decided against Cambridge, is entitled to collateral estoppel effect here.

The allegations that plaintiff and the third-party defendants violated Section 238-a of New York's Public Health Law not only pass the "plausibility" test of Rule 12 (b)(6), these allegations are based on factual findings made after two fully litigated actions, which resulted in the consolidated decision of Cambridge/Paduano by Judge Wade of Civil Court Kings County.

Judge Wade found that "after extensive review of all the exhibits submitted, particularly the service agreement, it is the court's opinion that the above activity violated Public Health Law 238-a."

Section 238-a (1) (b) of the Public Health Law prohibits a health care provider from collecting payment for any bill for services furnished pursuant to a referral prohibited by said statute. It provides a cause of action to recover payments made for claims submitted in violation of the statute in §238-a(7). It is a non-precludable defense which does not require a denial. Section 238-a(1)(a) expressly bars referrals where there is a "financial relationship" between the health care provider and the referring practitioner. A "financial relationship" is defined in Section 238(3) to include a "compensation arrangement." A "compensation arrangement" is then defined in Section 238-a (5) (a) as "any arrangement involving any remuneration between a practitioner, or immediate family member, and a health care provider. The term remuneration includes any remuneration, directly or indirectly, overtly or covertly, in cash or in kind."

21

The movants claim that "Cambridge did not have the "incentive or initiative'" to fully litigate the Civil Kings claims.  This is a serious misrepresentation.  Initially, it should be noted that the movants do not even annex the rulings they ask this Court to disregard.  Copies of the rulings are annexed hereto as Exhibit 6.  Cambridge went to great lengths to set forth its legal position fully and carefully, recognizing the potential impact of these cases. Cambridge was represented by two different law firms in these cases.  Cambridge's trial counsel for these two actions was Steven Neuwirth, a partner at Baker, Sanders, Barshay, Grossman, Fass, Muhlstock & Neuwirth, one of the largest no fault law firms. See the background information from Baker Sanders' web site annexed hereto as Exhibit 7.  According to the biographical information for Mr. Neuwirth, he "regularly lectures attorneys and judges on the practice of law in No-Fault litigation in the New York State and local bar associations.  See Exhibit 7.  Given the issues involved, Cambridge brought in a second law firm to join Mr. Neuwirth on the illegal referral issue.  Cambridge then submitted two post trial memoranda of law. See memoranda of law annexed as Exhibit 8.  The second memo was co-authored by Mr. Neurwirth and also by Ms. Diglio from Conroy & Associates, a firm which represented Dr. Debbi at her 2009 EUO and which subsequently merged with Mr. Blodnick's firm and has appeared in this very action on behalf of Cambridge. The court will note that the original attorney of record for plaintiff in the present action was Blodnick, Conroy, Fazio & Diglio PC. Thus, Cambridge was represented by two law firms on this issue – one of the largest no-fault law firms and its own corporate counsel who had appeared for it throughout its examination under oath and who proceeded to represent Cambridge in this action. Cambridge took these cases very seriously and made every attempt to prevail.  Cambridge subsequently lost and Allstate prevailed.

The Court of Appeals of the State of New York applied collateral estoppel effect to a no-fault arbitration award in the injured parties' subsequent personal injury case. See Clemens v. Apple ,65 N.Y.2d 746 (1985). In that case, the claimant had chosen to arbitrate the collection claim pursuant to Insurance Law §5106. Here, Cambridge chose to litigate its dispute with approximately the same amount in dispute as in Clemens v. Apple. It clearly recognized the significance of the legal issue and obtained two different law firms to assist it with the briefing of the issue including counsel for Cambridge in this case. Those decisions are now entitled to collateral estoppel effect in this case and require the denial of the movants' motion. These cases were decided against Cambridge and they should also apply to those in privity with Cambridge which would include its owner Third-party Defendants.

The Plaintiff claims that its agreements with its referring providers do not violate Section 238-a. Judge Wade disagreed with that claim and so does Allstate. Plaintiff offers no case law to support its unique claim that the service agreements are part of the lease agreements and the statute itself provides no exception for such agreements. They are in fact just another way to funnel kickbacks to the referring providers.

The statute limits safe harbor payments to lease payments for space. Cambridge used the service agreements as the cover for huge payoffs that generally amounted to much more than the payments under the leases and as set forth above Cambridge and Debbi initially concealed these agreements and payments.

The Plaintiff offers nothing but the self-serving opinion of its attorney that its leases fit within the "safe harbor" exemption of Section 238-a (5)(b) (i) (a). That statute, however, requires not just a written lease, but a lease which provides for the dedicated use of the sub-leased premises. The sample leases provided by Cambridge expressly state that the demised

premises are for "the non-exclusive use of examination rooms and common areas." On their face, such leases violate the requirement of the statute's safe harbor provision.  The lease referred to by the movants states that it is for a "minimum" amount of what is stated in the lease.   Public Health Law §238-a(5)(ii) requires that the lease amount be "consistent with fair market value" and that the amount not vary with the volume of referrals.  A "minimum" rent is not consistent with a fixed amount that does not vary.

If as Cambridge contends, the lease and service agreements were one agreement, then they would appear to be in violation of the statute.  If the lease agreement was for a fair market value amount, then having a second agreement which provides for the extra payment of three times the lease agreement and the fair market value, it is by definition not for the fair market value of the leased premises and it is in violation of the statute.

The Plaintiff has attempted to reverse the burden of proof on this "safe harbor" issue. In the Decision/Order for Dr. Matrangolo/Fitzhugh v Progressive, Judge Engoron dismissed a plaintiff's complaint for failing to disclose the lease in opposition to defendant's summary judgment motion, noting that it is the medical provider/plaintiff's  burden to prove that its lease falls within any safe harbor sections of Section 238-a.  (Exhibit 11)  Judge Engoron's ruling comports with the Court of Appeals' position that in "cases of exceptions, if one claims that a case falls within them, the burden is upon him to show the fact." Fisher v. Fisher, 205 N.Y. 313, 317 (1929).  See also,  Lombardi v. Stout, 80 N.Y. 2d 290 (1992) (party claiming exception under Labor Law bore burden of proof);  Massie v. Crawford 78 N.Y. 2d 516 (1991) (burden of proof on party claiming exception to statute of limitations in  a medical malpractice action).

Similarly, under corresponding federal law the party asserting an exception to the statute has the burden of proving that it qualifies for the exception.  New York State Public Health Law

238-a is modeled after 42 U.S.C. § 1395 nn, which is also known as the Stark Law.  In United States v Carlisle HMA, 554 F.3d 88 (3rd Cir. 2009), the Court ruled on a Stark Law case finding that once a referral is shown to be within the scope of the statute, the "burden shifts to the defendant to establish that its conduct was protected by (a statutory) exception."  See also United States v Rogan, 459 F. Supp.2d 692, 716 (ND.1ll. 2006).

Similarly, in the decision of Dr. Matrangolo/Annalouise Davis v Allstate, Judge Moulton noted that it is the plaintiff's burden to prove that any lease with the referring provider meets the "safe harbor" exemption, and that the failure of the plaintiff to appear in court in response to a subpoena to explain the terms of the lease was "fatal" to the plaintiff's case.  The Plaintiff's motion fails to annex any affidavit of merit as to the fair market value of the leases and whether they provide for the exclusive use of the sublet premises or meet any of the other requirements for the exception.  (Exhibit 9)

The movants cite two cases for the proposition that "a valid lease in effect during the time of the No-fault claims was found to establish a safe harbor entitling the practitioner reimbursement for medical services rendered during the term of the lease." Allstate agrees with this assertion only to the extent that it recognizes that Public Health Law 238-a prohibits lease arrangements unless they qualify for a safe harbor exception and this generally requires full discovery on the issue.  Allstate reiterates that a lease must meet all of the requirements set forth in the statute in order for the lease to be valid under the safe harbor exception, that the party claiming the exception bears the burden of proof and that the safe harbor exception does not include other financial arrangements such as the payments for service agreements in this case. It is to be noted that in one of the cited cases Matrangolo DC, PC a/o Tina Espinozo-Hernandez and Edgar Hernandez v. Allstate, 2012 WL 638803 (N.Y. City Civ Ct.), the Court ruled against

25

the Plaintiff so its discussion of the validity of the lease was dicta and that in the other case Matrangolo, DC, PC a/o Kevin Fogah., v. Allstate, 31 Misc3d 129(A) (App Term, 1st Dept. 2011), the Court reversed summary judgment against the Plaintiff because the Defendant had failed to put the lease into evidence and relied upon "unparticularized" statements made two years prior to the underlying referral.

Cambridge admits in its motion that it has financial relationships with its referring providers. That admission proves a prima facie case that Cambridge violated Section 238-a of the Public Health Law. That admission, and the aforementioned case law, supports the denial of the movants' motion.   The motion should be denied based upon collateral estoppel and the fact that the movants have not met their burden of proof.  Even if this were a summary judgment motion, the movants have produced agreements with only one referring provider and full discovery should be ordered as to the agreements including the requirements of the statute that the lease be for fair market value.

The Plaintiff apparently now concedes that the sonograms/ultrasounds are within the scope of Sections 238-a, and Judge Wade's decision specifically involved bills for ultrasound. She notes in her decision that Section 238 (13)(g) expressly includes ultrasound within the tests and services covered by the statute.

Cambridge contends that its electodiagnostic testing is not encompassed within the scope of Section 238-a. Cambridge makes two claims.

First it claims that the referring providers did not select the tests that were performed by Cambridge.  The statute does not require that specific tests be ordered.  Cambridge's claim is also a sham.  Cambridge claims that they conducted consultations of the patients and then ordered the testing.  However, these consultations were shams.  Invariably the testing was

ordered and incredibly no matter how many patients were tested and no matter what symptoms were reported, the same battery of tests on the same nerves was administered.  At a minimum Allstate is entitled to discovery as to the sham nature of these consultations.

Second, Cambridge claims that electodiagnostic testing is not included within the Public Health Law prohibition.  Cambridge does not submit any case law in support of this claim.  The movants have failed to mention that neurological tests fall within the statutory definition of "physical therapy services" as that term is defined by Section 6731 of the Education Law.  This issue has been considered in the case law and the rulings have held that electodiagnostic testing is in fact within the scope of the Public Health Law referral prohibition.

Judge Moulton, Administrative Judge for the Civil Court, New York, ruled in three decisions that electrodiagnostic testing billed under Codes 97756, 95999 and 95904 was "specifically" within the type of physical therapy services covered by Section 238-a. See Dr. Steven Matrangolo, D.C. P.C. v. Allstate, Index# 060409/09 (Moulton J, NY Civil Court 2011); Dr. Steven Matrangolo, D.C. P.C. v. Allstate, Index# 060393/09 (Moulton J, NY Civil Court 2011); and, Dr. Steven Matrangolo, D.C. P.C. v. Allstate, Index# 060388/09. (Exhibit 9)

In another decision for four cases that were consolidated for trial, Matrangolo a/o Infuso (CV-012997-09); a/o Fanelli (CV-050716); a/o Jackson (CV-012988-09); a/o Muscara (CV-012992-09)  v Allstate, Judge Debra Rose Samuels found that the electrodiagnostic tests billed under Codes 95999 and 95904 were  within the scope of Section 238-a because they were "tests and measurements to assess pathophysiological, pathomechanical  and developmental deficits of human systems to determine treatment, and assist in diagnosis and prognosis" (see pages 15-16 of the annexed transcript).  (Exhibit 10)   Similarly, in Matrangolo/Fitzhugh v Progressive, Judge Engoron found that electrodiagnostic tests were within the scope of  Section 238-a.  (Exhibit 11)

In two recent arbitration awards, Optimum/Monteleone v Geico and Optimum /Rosario v Geico, Arbitrator Jacob found upper and lower extremity pf-ncs tests (electrodiagnostic tests billed under Code 95904) to be within the scope of Section 238-a. (Exhibit 12)

Section 238-a(1)(a) of the Public Health Law prohibits self-referrals and is specifically applicable to physical therapy services, which are broadly defined in Section 6731(a) of the New York State Education Law to include the type of tests administered by plaintiff. The Definition Section of Public Health Law 238 purposefully incorporates the Education Law definition [see §238(16)]. As Judge Moulton noted in Matrangolo/Davis v Allstate, the statute "specifically applies to the type of physical therapy services that are the subject of the bills herein" ( i.e., electrodiagnostic tests).

Section 6731(a) of the Education Law defines "physical therapy services" to include "the performance and interpretation of tests and measurements to assess pathophysiological, pathomechanical and development deficits of human systems to determine treatment and assist in diagnosis and prognosis." As Judge Samuels noted in her comments (on page 29 of the trial transcript annexed as Exhibit 10) "even a laymen" can determine that a "diagnostic test" fits within that statutory description of physical therapy services.

## V. The Movants' Res Judicata and Statute of Limitations Claims Are Not Suitable For Resolution On This Motion.

The movants contend that some of Allstate's claims "may" have been decided in whole or in part and be entitled to res judicata treatment. However, the movants do not identify any such judgment they believe applies to part or all of Allstate's claim. As such there is no factual basis for the movants' claims. The movants and Allstate are now in discovery. The movants have served requests upon Allstate. At the conclusion of discovery if there are any claims the movants believe have been the subject of a prior

judgment, they can raise the issue after discovery.  At this point the movants have not

identified any judgment they are referring to and there is no possible basis to move to

dismiss the complaint based upon a conjecture that a claim "may" have been decided and

included in a prior judgment.

Similarly, the movants' statute of limitation defense is premature.  As the movants

have set forth in support of their motion, Allstate did in fact conduct an examination

under oath of Cambridge.  And again as the movants contend, Allstate learned some

information about the movants in the course of that examination under oath.  The full

scope of the movants' fraud and the extensive illegal payments made by the movants

were not known until they were discovered during the examination under oath.  As such

the statute of limitations should run from the time of discovery.  At minimum, this is an

issue to be inquired into during discovery.  On the present record there is no basis for a

motion to dismiss based upon this issue at this time.  See, e.g. Allstate v. Halima, 2009

WL 750199 (EDNY 2009).

The movants also contend that Allstate is setting forth claims for medical

malpractice and should be subject to a two-and-a-half year statute of limitations.  Allstate

is not suing for any damage to a patient.  It is quite possible that the Plaintiff and Third-

Party Defendants have damaged patients with their brazen and fraudulent practices.

However, Allstate is not suing for any damages for medical malpractice.  The movants

offer no case law which applies the statute of limitations for medical malpractice to fraud

and RICO claims.  The movants do not even attempt to set forth any case law as to how

Allstate could sue the movants for damages for medical malpractice to the patients of the

movants.  This claim by the movants is barren of any supporting case law and it appears to be without any possible basis.

### VI.  In The Alternative Allstate Requests Leave to Replead.

While Allstate believes the Counterclaims and Third-Party Complaint are well pleaded, should the Court for any reason find any aspect of the third-party complaint to be insufficiently specific and/or pleaded, then Allstate requests leave to file an amended third-party complaint.

### Conclusion

Allstate requests that the motion to dismiss be denied.

Dated: June 20, 2012

*Respectfully Submitted,*

Short & Billy, P.C.
Attorneys for Allstate

By:   _____
RANDALL K. ROONAN (RR4407)
SKIP SHORT (SS2788)
217 Broadway, Ste. 300
New York, NY 10007
(212) 732- 3320
randyr@shortandbill.com

To:     Jonathan J. Arzt, Esq.
Blodnick, Fazio and Associates, P.C.
1325 Franklin Avenue
Garden City, NY 11530
jartz@blodnickfaziolaw.com

Kenneth C. Henry, Jr., Esq.
KENNETH C. HENRY, JR., P.C.
900 Merchant's Street, Ste. 303
Westbury, N.Y. 11590
khenry@Kenhenryesq.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CAMBRIDGE MEDICAL, P.C.,                          Case No:
                                                 2:11-cv-04044-LDW-ETB


                              Plaintiff,
                  -against-

ALLSTATE INSURANCE COMPANY, et al.


                              Defendant,
-------------------------------------------------------------------X


ALLSTATE INSURANCE COMPANY, et al.

            Defendants and Third Party Plaintiffs

                  -against-

PINE HOLLOW MEDICAL, P.C., et al.,

                  Third Party Defendants.
-------------------------------------------------------------------X


**DEFENDANTS' AND THIRD-PARTY PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF AND THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS**


SHORT & BILLY, P.C.
Attorneys for Defendants and Third-Party Plaintiffs
ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY and
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,
217 Broadway, Suite 300
New York, N.Y. 10007
(212) 732-3320
rroonan@shortandbilly.com